UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 11-245-JBC

JERRY R. MARSH, PLAINTIFF,

V. **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Jerry Marsh's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The court will grant the Commissioner's motion, R. 16, and deny Marsh's motion, R. 13, because substantial evidence supports the administrative decision.

Marsh filed his claim for DIB on October 30, 2003, alleging a disability onset date of December 10, 1993, due to leg and back pain resulting from a 1990 accident and subsequent surgeries. AR 62, 68. The claim was denied both initially and upon reconsideration. AR 23-24. Following hearings on October 4, 2005, and January 1, 2006, Administrative Law Judge ("ALJ") F. David Albanese issued a partially favorable decision finding that Marsh was entitled to a closed period of DIB from March 1, 1990, through December 1, 1995. AR 356-362, 476-506, 507-541. The Appeals Council reviewed this decision on November 2, 2006, and found that because disabled status ended more than twelve months before the filing of

1

the DIB application, disability benefits could not be paid based upon Sections 216(j) and 223 of the Social Security Act and 20 C.F.R. Sections 404.320(b)(3) and 404.315(a)(3). AR 375-376. However, in June of 2011, the Appeals Council vacated its November 2006 ruling as having been issued prematurely and issued another decision on July 28, 2011, stating that Marsh was not entitled to DIB. AR 11-18, 442-448.

Under the traditional five-step analysis, *see Preslar v. Sec. of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994), the Appeals Council concluded that Marsh did not engage in substantial gainful activity "during various periods during the period at issue…," AR 17; that his back disorder was a severe impairment, *Id.*; that Marsh's back disorder met the requirements of Section 1.04A of the Listing of Impairments from March 1, 1990, through November 20, 1998, but that after this date, he experienced medical improvement related to his ability to work and thus no longer met the Listing section, *Id.*; and that as of November 21, 1998, Marsh had the ability to perform a restricted range of sedentary-level work and could return to his work as a locksmith, which was found to be past relevant work. AR 17, 534. Despite the finding of a closed period of disabled status, the Appeals Council again determined that Marsh had not filed his DIB application within twelve months of the end of his disabled status. AR 16-17. Marsh then commenced this action.

Marsh, acting *pro se*, alleges a number of errors on the part of the Appeals Council, including: (1) that the Appeals Council erred in finding that Marsh's

2

condition improved to the point that he no longer met Listing 1.04A after November 20, 1998; and (2) that the evidence of record does not support a finding that Marsh could perform the job of locksmith. Neither of these arguments will prevail.

Marsh provides several reasons for his argument that the Appeals Council erred in finding that Marsh's condition no longer met Listing 1.04A after November 20, 1998. First, Marsh argues that the testimony of Dr. Lorber supports his claim that he continues to meet the Listing requirements. Dr. Lorber testified at the second administrative hearing that the record did not indicate medical improvement in Marsh's condition since 1996, which implies that he would still meet Section 1.04A. AR 529. However, Dr. Lorber opined that Marsh did not meet the Listing after December 27, 1995. AR 493. Dr. Lorber stated that after that date, Marsh could perform a restricted range of sedentary-level work. AR 493, 528-529. These limitations were presented to Vocational Expert ("VE") Janet Chapman, who testified that Marsh would still be able to perform his work as owner of a locksmith business. AR 536. Thus, the testimony of Dr. Lorber supports the administrative decision.

Second, Marsh argues that the Appeals Council erred in discounting the findings of Dr. John Shuler, his treating surgeon, who diagnosed lumbar disc disease at L4-L5 and lumbar radicular syndrome at L5-S1 with noted stenotic areas on the left S1 nerve following an April 1995 fusion surgery. AR 151-152. Because these findings were made during a period in which Marsh was found by

3

the Appeals Council to have met the Listing, they do not support Marsh's argument.

Third, Marsh asserts that the ALJ improperly relied upon his November 1998 visit to St. Elizabeth because the visit consisted of only one physician's observations during one examination and concerned problems related to a neck injury rather than his back. However, during the visit, Marsh was noted to be neurologically normal down his arms, AR 174, and he showed additional signs of improvement in a subsequent visit at St. Elizabeth during December 1998. AR 179. Although Marsh complained about back pain at that time, his reflexes and strength were found to be normal. AR 179-80. Marsh also argues that the finding of a straight-leg-raising test supports his claim that the Listing was still met and that the diagnosis of acute exacerbation of chronic back pain is consistent with spinal stenosis. But the finding was not definitive, *Id.*, and the alleged diagnosis was not made during the hospital visit. AR 179-180. Therefore, treatment records from St. Elizabeth support the Appeals Council's claim of medical improvement before Marsh's DIB filing date.

Fourth, Marsh asserts that the Appeals Council erred in discounting the treatment records of Dr. Jeremy Engel from September 2000 through March 2001, Dr. Mitchell Simons from March 2001, and the staff at NovaCare Rehabilitation 0from August 10, 2001, which show findings of positive straight-leg raising bilaterally. AR 222-230, 232, 259. However, these records did not identify any of the other listing requirements such as atrophy and sensory or reflex loss. The

4

NovaCare therapist indicated that sensation was intact and deep tendon reflexes were equal bilaterally. AR 259. Dr. Simons reported that motor strength was within normal limits and that reflexes were intact. AR 232. Evoked potential studies obtained by Dr. Simons in May 2001 were within normal limits and failed to demonstrate lumbar radiculopathy or any other lesion affecting the sensory conduction pathways. AR 276. Thus, the Appeals Council did not err.

Fifth, Marsh argues that the Appeals Council erred in discounting findings of scar tissue on an August 2001 lumbar myelogram around the L5-S1 area, a May 2001 report of Dr. Simons, and an October 2003 report from Dr. Simons. AR 264, 261-62, 251. But while these reports indicate continuing medical problems, they do not identify findings which meet the Listing requirements.

Sixth, Marsh argues that the Appeals Council improperly interpreted and discounted the April 2001 nerve-conduction studies showing borderline left posterior tibial motor distal latency. AR 275. Despite this finding, the studies were within normal limits and failed to indicate peripheral neuropathy or any clear peripheral entrapment. *Id.* Thus, this report does not contain information which supports Marsh's disability claim.

Lastly, Marsh asserts that the ALJ improperly interpreted and discounted the results of a January 9, 2002, CT scan of the lumbar spine which revealed a decompressive laminectomy defect at L5-S1. AR 274. Marsh does not explain how this finding would meet the requirements of Section 1.04A, and disc

5

herniation, spinal stenosis, and nerve root compression were not shown; therefore, this finding does not support his disability claim.

In regard to the issue of whether Marsh can return to his past work as a locksmith, the AC did err, albeit harmlessly. The record indicated that Marsh was the owner of a locksmith business, not a locksmith, and Marsh denied having performed actual locksmith work. AR 96, 101, 453. However, the VE was aware of this distinction, noting the work of locksmith business owner as one of Marsh's past jobs, and the VE indicated that the work of a locksmith business owner could still be performed even with the sedentary-level restriction and applicable physical restrictions found by Dr. Lorbe. AR 535-536, 493. The Appeals Council relied upon this testimony in finding that past work remained available to Marsh. AR 16-17. Therefore, the Appeals Council's error on this issue is harmless.

Additionally, the record reveals that in March 2000, Marsh returned to work as a convenience store clerk and, for a time, as a maintenance worker at Thomas More College, remaining employed until October 2000. AR 86. The VE testified that these jobs were performed at the light exertional level, well above the sedentary-level restriction imposed by Dr. Lorber. AR 535. Marsh's ability to perform light-level work for eight months provides additional evidence that Marsh was no longer disabled.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Marsh's motion for summary judgment, R. 13, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 16, is **GRANTED**.

The court will enter a separate judgment.

Signed on January 2, 2013

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

7